UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON PORTIS, JR.,

    Plaintiff,

Case No. 1:09-cv-846

Hon. Robert J. Jonker

vs.

PATRICIA CARUSO, *et al.*,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on Ephraim Habtemariam's motion for summary judgment (docket no. 61).

**I.**    **Background**

Plaintiff's action arises from alleged inadequate medical care for an injury to the fifth digit of his right hand (pinky finger) which occurred while playing softball at the Michigan Training Unit (MTU) on June 30, 2006 and for an injury to the third finger of his right hand (middle finger) which occurred while lifting weights at Ionia Maximum Correctional Facility (ICF) on May 13, 2008. Plaintiff's complaint named 13 defendants and sought over two million dollars in damages.[1] The court previously dismissed defendants Director Caruso, CMS, Warden Prelesnik, Dr. Pandya and Dr. Burgess. *See* Order Approving Report and Recommendation (docket no. 66). In addition,

---

[1] The court summarized plaintiff's allegations at length in a previous Report and Recommendation. See Report and Recommendation at pp. 2-6 (docket no. 60).

the court dismissed all claims against R.N. Habtemariam, except plaintiff's claim that Habtemariam failed to provide him with adequate pain medication in violation of the Eighth Amendment. *Id.*

Plaintiff's claim regarding the medication is based upon the following allegation:

> Plaintiff made repeated requests with herein defendants, Dr. Nelson, Gregurek, Rowland, Donna Rohrs, Habitrnarum [sic] and Bates for a stronger pain medication because the Tylenol prescribed simply did not adequate [sic] address the pain being experienced. (See, attached Health Care request of 5/16/08, 5/30/08, 6/6/08, 6/20/08, 7/7/08, 1/20/09, 1/26/8 [sic]).

Compl. at ¶ 71 (docket no. 1). Plaintiff's claim is based upon seven health care requests summarized as follows. On May 16, 2008, plaintiff stated that the "[t]he current medication RN James C. Bates gave me is not working at all." Health Care Request (docket no. 1-2). On May 30, 2008, plaintiff stated that he needed to see a doctor because his finger was very painful and Nurse Perry said that his finger was still swollen. *Id.* On June 6, 2008, plaintiff stated that he needed a stronger medication for pain. *Id.* On June 20, 2008, plaintiff stated that his finger is not healing properly and he needed to see a doctor and an orthopedic specialist. *Id.* On July 7, 2008, plaintiff stated that while he was at health care, he asked nurses about his finger not bending correctly and having pain in it, but that "the nurses" would not see him. *Id.* On January 20, 2009, plaintiff stated that his finger was still hurting. *Id.* Finally, on January 26, 2009, plaintiff ask health care to provide "pain medication immediately." *Id.*

R.N. Habtemariam did not address this violation in his previous motion for summary judgment. Accordingly, the sole issue before the court is whether R.N. Habtemariam failed to provide adequate pain medication to plaintiff.

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Failure to exhaust

#### 1. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first

exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

### 2. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).[2] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. If the prisoner is dissatisfied with the Step I response, or does not receive

---

[2] Plaintiff filed grievances regarding inadequate medical care at ICF from August 2007 through August 2008.

4

a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the appropriate MDOC official.

### 3. Plaintiff's grievances pursued through Step III

The record reflects that plaintiff exhausted four grievances through Step III while incarcerated at ICF: ICF-2007-08-1608-12F3 ("1608")(dated August 22, 2007) (docket no. 37-9); ICF-2007-10-1994-12e1 ("1994) (dated October 14, 2007) (docket no. 37-10); ICF-2008-05-1181-12E3 ("1181") (dated May 23, 2008) (docket no. 37-11); and, ICF-2008-1775-12D1 ("1765) (dated August 14, 2008) (docket no. 37-12).

Grievance no. 1608 is unrelated to the claim at issue in this motion. This grievance pre-dates plaintiff's first request for stronger pain medication on May 16, 2008, and grieves untimely issuance of cholesterol medication. *See* grievance no. 1608 (docket no. 37-9).

Grievance no. 1994 is also unrelated to the claim at issue in this motion. This grievance pre-dates plaintiff request for stronger pain medication, and is directed to CMS and others for cancelling a scheduled surgery to repair the 2006 injury to his right pinky finger. *See* grievance no. 1994 (docket no. 37-10).

Grievance no. 1765 is also unrelated to the claim at issue in this motion. In this grievance about the timeliness and appropriateness of the medical treatment for the May 2008 finger injury, plaintiff complains specifically that "Dr. Nelson declined to have a hand specialist evaluate my medical condition and make the appropriate repairs." *See* grievance no. 1765 (docket no. 37-12). This grievance makes no mention of R.N. Habtemariam's alleged failure to provide pain medication.

5

The only grievance which mentions R.N. Habtemariam is grievance no. 1181. *See* grievance no. 1181 (docket no. 37-11). This grievance sets forth an incident date of May 13, 2008. *Id.* However, the grievance does not complain that R.N. Habtemariam failed to provide plaintiff with pain medication as alleged in the complaint (i.e., as requested on May 16, 2008). Rather, this grievance complains that R.N. Habtemariam delayed in providing plaintiff with medical treatment on May 13th, a claim which has been dismissed. *See* Order Approving Report and Recommendation (docket no. 66). The grievance's only reference to May 16, 2008 involves plaintiff's interaction with Dr. Williams. *See* grievance no. 1181. This grievance is internally inconsistent. After complaining that he had "not been given any manner of treatment for this injury which is very painful," plaintiff lists the treatment he received (i.e., an x-ray, a butterfly bandage on the injury, and pain medication (Tylenol)). *Id.* Plaintiff then complained that the Tylenol "does nothing to alleviate the pain" and that this treatment is evidence of gross neglect and deliberate indifference by Dr. Williams because the doctor "is required by his Hypocratic Oath to provide the best medical care possible." *Id.*

While grievance no. 1181 raised a number of claims against various health care providers, including R.N. Habtemariam's delayed treatment of his finger on May 13th, the grievance does not grieve Habtemariam in the manner charged in the complaint, as mandated by PD 03.02.130 ¶ R (requiring that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included").

### 4. Conclusion

Plaintiff has failed to properly exhaust a grievance against R.N. Habtemariam for failing to provide him with adequate pain medication. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendant is entitled to summary judgment for lack of exhaustion.

### B. Failure to state an Eighth Amendment claim against CMS

Even if plaintiff had exhausted a claim against R.N. Habtemariam for failing to provide adequate pain medication, defendant would be entitled to summary judgment on the merits of this claim. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Viewing the evidence in the light most favorable to plaintiff, the court concludes that there is no genuine issue of material fact that R.N. Habtemariam failed to provide plaintiff with adequate pain medication from May 13, 2008 through May 16, 2008. The May 16th health care request attached to plaintiff's complaint identified R.N. Bates as the nurse who gave plaintiff the Tylenol. *See* Health Care Request (May 16, 2008) (docket no. 1-2). R.N. LeBarre received the health care request (kite) regarding inadequate pain medication on May 17th and responded to the

8

kite by seeing plaintiff in the clinic on May 19th. *See* Habtemariam Aff. at ¶¶ 8-9 (docket no. 62-1); MDOC Kite Response (May 19, 2008) (docket no. 62-1). Furthermore, R.N. Habtemariam is not responsible for changing the prescribed pain medication. As a registered nurse, Habtemariam does not prescribe medication or have the authority to change medications as ordered by the medical provider. Habtemariam Aff. at ¶ 6. Accordingly, R.N. Habtemariam is entitled to summary judgment on this claim.

V. **Recommendation**

For the reasons set forth above, I respectfully recommend that R.N. Habtemariam's motion for summary judgment (docket no. 61) be **GRANTED** and that he be dismissed from this action.

Dated: January 24, 2011 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).