UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON PORTIS, JR.,

        Plaintiff,

Case No. 1:09-cv-846

Hon. Robert J. Jonker

vs.

PATRICIA CARUSO, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions for summary judgment by defendants Sherry Rowland (docket no. 95) and Sherri Gregurek (docket no. 107). Defendants' motions are unopposed.

**I.    Background**

Plaintiff's action arises from alleged inadequate medical care for an injury to the fifth digit of his right hand (pinky finger) which occurred while playing softball at the Michigan Training Unit (MTU) on June 30, 2006 and for an injury to the third finger of his right hand (middle finger) which occurred while lifting weights at Ionia Maximum Correctional Facility (ICF) on May 13, 2008. Plaintiff's complaint named 13 defendants and sought over two million dollars in damages.[1] The court previously dismissed defendants Director Caruso, CMS, Warden Prelesnik, Dr. Pandya,

---

[1] The court summarized plaintiff's allegations at length in a previous Report and Recommendation. *See* Report and Recommendation at pp. 2-6 (docket no. 60). This report will address the allegations relevant to R.N. Rowland and R.N. Gregurek.

Dr. Burgess and RN Habtemariam.  *See* Order Approving Report and Recommendation (docket no. 66); Order Approving Report and Recommendation (docket no. 106).

### II. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is

not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, defendants' motions are unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III.     R.N. Sherry Rowland

#### A.     Plaintiff's allegations

Plaintiff has set forth the following allegations against RN Sherry Rowland. On July 1, 2006, RN Rowland and others failed "to schedule an appointment for 7/1/06, to have [the] boxing glove splint removed and regular splint placed on, check circulation, [and] reschedule appointment with defendant [Dr.] Iqbal" causing plaintiff's finger to be permanently deformed, lose dexterity and result in considerable pain. Compl. at ¶ 29. In addition, plaintiff alleged that R.N. Rowland and other defendants engaged in a "systematic exclusion of pain medication" causing him unnecessary hardship and pain in violation of his Eighth Amendment rights. *Id.* at ¶¶ 74 and 83.

### B. Plaintiff's Eighth Amendment claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect

4

that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Viewing the evidence in the light most favorable to plaintiff, the court concludes that there is no genuine issue of material fact that R.N. Rowland was not deliberately indifferent to plaintiff's medical needs.[2]

First, there is no evidence that R.N. Rowland met with plaintiff between June 30 and July 1, 2006, or that she failed to schedule a follow-up appointment for plaintiff on July 1, 2006. MTU medical records reflect that R.N. Rowland's first interaction with plaintiff after his injury occurred on July 4, 2006. *See* MDOC Medical Record (docket no. 95-1). On that date, R.N. Rowland examined plaintiff, who complained that he had not seen the doctor and that his finger was

---

[2] RN Rowland has not presented an affidavits or deposition testimony in support of her position. However, because plaintiff has not objected to the authenticity of the medical records submitted with the motion for summary judgment (*see* Fed. Rules Civ. Proc. 56(c)(2)("[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence")), the court will consider those records for purposes of resolving this motion. "If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived." *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

"throbbing." *Id.* R.N. Rowland observed that plaintiff's splint and ace wrap remained intact, dispensed 800 mg of motrin as pain medication, and noted that plaintiff's order for ultram had expired. *Id.* Plaintiff was instructed to keep his arm elevated to prevent throbbing and verbalized his understanding of this instruction. *Id.*

Plaintiff's only other interactions with R.N. Rowland occurred on July 6, July 28 and August 2, 2006. On July 6, 2006, plaintiff stated to R.N. Rowland that he had not seen the doctor. *See* MDOC Medical Record (docket no. 95-2). R.N. Rowland examined plaintiff in the clinic. *Id.* The soft splint was removed to check plaintiff's right little finger, which had moderate swelling and "ecchymosis" around the joint.[3] *Id.* Plaintiff was unable to fully flex and extend the finger due to pain and stiffness. *Id.* R.N. Rowland re-wrapped the finger in a soft splint with case padding and an ace wrap, gave plaintiff motrin (600 mg dose), with instructions to see a medical service provider as soon as one is available. *Id.* On July 28, 2006, R.N. Rowland examined plaintiff regarding his complaint of a sore and swollen finger. *See* MDOC Medical Records (docket no. 95-3).[4] Plaintiff stated that he had been using warm compresses and range of motion exercises. *Id.* The nurse examined plaintiff's finger, noted that he had an enlarged joint, the inability to flex and extend completely, and "no maceration."[5] *Id.* R.N. Rowland advised plaintiff to continue warm compresses and range of motion exercises, and to see a medical service provider for re-evaluation when appointment is available. *Id.* Finally, on August 2, 2006, R.N. Rowland spoke to plaintiff on the

---

[3] "Ecchymoisis" is defined as "a small hemorrhagic spot, larger than a petechia, in the skin or mucous membrane forming a nonelevated, rounded or irregular, blue or purplish patch." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 524.

[4] The court notes that at one point in the July 28, 2006 examination, R.N. Rowland referred to plaintiff's "[l]eft small finger" rather than right small finger.

[5] "Maceration" is defined as "the softening of a solid by soaking." *Dorland's* at p. 975.

telephone, at which time plaintiff reported that his finger still hurt and he needed to see the doctor. *See* MDOC Records (docket no. 95-4). R.N. Rowland instructed plaintiff to get some pain medication on the store list and scheduled a follow-up appointment with the doctor. *Id.* Plaintiff verbalized his understanding of the instructions. *Id.*

Second, the record reflects that plaintiff had limited contact with R.N. Rowland in July and August, 2006, and that her actions did not amount to deliberate indifference. There is no evidence that R.N. Rowland "systematically excluded" plaintiff from receiving pain medication. On the contrary, R.N. Rowland examined plaintiff's finger on three occasions in July 2006, during which she administered pain medication, advised plaintiff how to care for the finger, and advised plaintiff to request a doctor's appointment. On August 2, 2006, R.N. Rowland scheduled an appointment with the doctor. Nothing in the record suggests that R.N. Rowland acted with deliberate indifference contrary to the Eighth Amendment.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This action falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion

between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Accordingly, R.N. Rowland is entitled to summary judgment as to all of plaintiff's claims.

### IV. Sherri Gregurek

#### A. Plaintiff's allegations

Plaintiff has set forth the following allegations against RN Sherri Gregurek. After plaintiff injured his finger on June 30, 2006, R.N. Gregurek recorded the treating physician's instructions for treatment (i.e., Dr. Iqbal's instructions to remove the boxing glove splint on July 1, 2006, replace it with a regular splint and check finger coloration), but did not schedule plaintiff for that procedure. Compl. at ¶¶ 24-26. Plaintiff further alleged that R.N. Gregurek and other defendants disregarded his written health care requests or kites for stronger pain medication on the following dates: January 26, 2008; May 16 and 30, 2008; June 6, 9 and 20, 2008; July 7, 2008; and January 20, 2009. *Id.* at ¶ 71.

#### B. Exhaustion of plaintiff's 2006 claim against R.N. Gregurek

Plaintiff did not properly exhaust his remedies with respect to his claim that R.N. Gregurek failed to schedule him for a follow-up appointment to remove his splint after he returned from the hospital on June 30, 2006. The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly

exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003), sets forth the applicable grievance procedures for prisoners in MDOC custody when plaintiff suffered his injury in June 2006. Inmates must first attempt to resolve a problem verbally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ R. If verbal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* at ¶¶ R, X. The Policy Directive requires that the grievance form be completed as follows:

> The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ T (emphasis in original).

The inmate then submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II. *Id.* at ¶¶ R, DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶¶ R, HH.

The court previously determined that plaintiff exhausted four grievances while incarcerated at MTU:

> The record reflects that plaintiff filed four grievances exhausted through Step III while incarcerated at MTU: MTU-2006-04-514-08h ("514"); MTU-2006-05-598-17a ("598"); MTU-2006-04-533-23z ("533"); and MTU-2006-07-835-27b ("835"). *See* Exhs. B, C, D and E attached to CMS' Brief (docket nos. 45-4, 45-5, 45-6 and 45-7). The first three grievances do not relate to health care issues (no. 514 grieves the calculation of plaintiff's sentence; no. 598 grieves the school principal for not allowing him to use the restroom; and no. 533 grieves that his telephone list is not being properly maintained). The only grievance that arguably pertains to plaintiff's claims is no. 835, which complains that certain members of the correctional facility's staff took too long to take him to the hospital when he injured his finger on June 30, 2006.

Report and Recommendation at p. 11 (docket no. 60). None of these exhausted grievances relate to R.N. Gregurek's alleged failure to schedule a doctor's appointment after plaintiff returned from the hospital on June 30, 2006.

Plaintiff has failed to properly exhaust a grievance against R.N. Gregurek for failing to schedule a doctor's appointment after he returned from the hospital on June 30, 2006. *See Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, R.N. Gregurek is entitled to summary judgment for lack of exhaustion with respect to this claim.

### C.  Plaintiff's claims against R.N. Gregurek regarding his requests for stronger pain medication in 2008 and 2009

Plaintiff's claim that R.N. Gregurek refused his requests for stronger pain medication in 2008 and 2009 are without merit because Gregurek had no personal involvement with plaintiff's treatment at that time. Plaintiff transferred from MTU to ICF on December 15, 2006. Gregurek Aff. at ¶ 8. R.N. Gregurek would have no involvement with plaintiff's requests for "stronger pain medication" made at ICF in 2008 and 2009, because she has never worked at ICF. *Id.* at ¶¶ 7-9. "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed.Appx. 972, 974 (6th Cir. 2011). "It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Rogan v.*

10

*Menino*, 175 F.3d 75, 77 (1st Cir. 1999). Furthermore, Gregurek could not have provided plaintiff with stronger medication in any event, because as an R.N., Gregurek neither prescribes medication nor has the authority to change the medications ordered by the medical provider. *Id.* at ¶ 9. Accordingly, R.N. Gregurek is entitled to summary judgment with respect to plaintiff's claims regarding the alleged failure to provide stronger pain medication in 2008 and 2009.

### V.     Recommendation

For the reasons set forth above, I respectfully recommend that the uncontested motions for summary judgment filed by R.N. Rowland (docket no. 95) and R.N. Gregurek (docket no. 107) be **GRANTED** and that these defendants be dismissed from this action.


Dated: June 6, 2011                                                  /s/ Hugh W. Brenneman, Jr.
                                                                                HUGH W. BRENNEMAN, JR.
                                                                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).