UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRESTON PORTIS, JR.,

    Plaintiff,

Case No. 1:09-cv-846

Hon. Robert J. Jonker

vs.

PATRICIA CARUSO, *et al.*,

    Defendants.
               /

**REPORT AND RECOMMENDATION**

  This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983.[1]  This matter is now before the court on the following motions: defendant James Bates' motions to set aside the Clerk's entry of default (docket no. 116) and for summary judgment (docket no. 127); defendant Richard Czech's motion for summary judgment (docket no. 120); and defendant Dr. Zafar Iqbal's combined "motion to dismiss pursuant to Fed. R. Civ. P. 12(c) and/or for summary judgment under Fed. R. Civ. P. 56" (docket no. 130).  Defendants' motions are unopposed.

  **I.**  **Background**

  Plaintiff's action arises from alleged inadequate medical care for an injury to the fifth digit of his right hand (pinky finger) which occurred while playing softball at the Michigan Training Unit (MTU) on June 30, 2006 and for an injury to the third finger of his right hand (middle finger) which occurred while lifting weights at Ionia Maximum Correctional Facility (ICF) on May 13, 2008.  Plaintiff's complaint named 13 defendants and sought over two million dollars in damages.

---

[1] It appears that plaintiff was paroled on or about January 11, 2011.  *See* Plaintiff's Change of Address (docket no. 91); Michigan Department of Corrections Offender Tracking Information System (OTIS) at www.michigan.gov/corrections (biographical information for Preston Portis Jr No. 191775).

The court summarized plaintiff's allegations in previous Reports. *See* Report and Recommendations (docket nos. 60, 98 and 129). This report will address the allegations relevant to defendants Bates, Czech and Iqbal. The court previously dismissed defendants Director Caruso, CMS, Warden Prelesnik, Dr. Pandya, Dr. Burgess, RN Habtemariam, RN Gregurek and RN Rowland. *See* Order Approving Report and Recommendation (docket no. 66); Order Approving Report and Recommendation (docket no. 106); Order Approving Report and Recommendation (docket no. 132).

## II.     RN Bates' motion to set aside entry of default (docket no. 116)

On May 2, 2011, the Clerk's Office entered a default as to defendant RN James Bates pursuant to Fed. R. Civ. P. 55(a). RN Bates has now filed a motion to set aside the entry of default pursuant to Fed. R. Civ. P. 55(c). The motion is unopposed. Accordingly, the motion to set aside entry of default (docket no. 116) should be granted.

## III.    Dr. Iqbal's combined motions for judgment on the pleadings and to dismiss (docket no. 130)

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The court will address Dr. Iqbal's motion as one for judgment on the pleadings under Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." "For purposes of a motion for

judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal citation and quotation marks omitted). A Rule 12(c) is granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.*

Plaintiff alleged Dr. Iqbal was the attending physician at Ionia County Memorial Hospital (ICMH), examined plaintiff at the time of his injury on June 30, 2006, decided not to perform surgery at that time, and recommended that plaintiff be examined at his office in eight to ten days. Compl. at ¶¶ 23-27. Plaintiff makes no further allegations against the doctor. Dr. Iqbal contends that plaintiff's claim should be dismissed because it was untimely. The court agrees. The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Plaintiff filed this § 1983 action on September 11, 2009, more than three years after Dr. Iqbal's alleged actions on June 30, 2006. *See* Compl. (docket no. 1). Plaintiff's claim is untimely. Accordingly, Dr. Iqbal's motion for judgment on the pleadings should be granted.[2]

### IV. Motions for summary judgment

#### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] Because plaintiff's claims against Dr. Iqbal are untimely, it is unnecessary for the court to address Dr. Iqbal's other theories raised in his dispositive motion.

Fed. R. Civ. P. 56(a).  Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Here, defendants' motions are unopposed.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B. Defendant Czech's motion for summary judgment (docket no. 120)

Plaintiff contends that defendant Czech was deliberately indifferent to his serious medical needs. Defendant Czech, now retired, was a sergeant at MTU when plaintiff suffered his injuries. *See* Czech Aff. at ¶¶ 2-10 (docket no. 121-1). Plaintiff alleged that on June 30, 2006, while playing softball, his "small finger, 5th digit" (i.e., pinky finger) was struck by the ball and became swollen. Compl. at ¶ 16. When he arrived at the MTU control center for transportation to ICMH, the sergeant (defendant Czech) "determined that plaintiff could wait until it was determined whether or not another prisoner would require transportation to ICMH," despite "the obvious protruding bone of plaintiff's finger, enormous swelling, and pain and elevated vital signs." *Id.* at ¶ 18. According to plaintiff, due to Sergeant Czech's actions, "plaintiff waited at the control center approximately one hour before it was determined the other prisoner would not require emergency treatment at ICMH" and plaintiff was transported to the hospital. *Id.*[3]

It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97

---

[3] It would appear that plaintiff's claim against Sergeant Czech, which occurred on June 30, 2006, is barred by the applicable statute of limitations. *See* discussion in § III, *infra*. However, Sergeant Czech has not raised this issue.

(l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Hudson*, 503 U.S. at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Here, plaintiff alleged that Sergeant Czech violated his constitutional rights by delaying medical treatment of his injured pinky for one hour. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citation omitted). Where a prisoner's affliction is seemingly minor or non-obvious, "medical proof is necessary to assess whether the delay caused a serious medical injury." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 898 (6th Cir. 2004). In this case, plaintiff's injury appeared minor or non-obvious. While plaintiff alleged that he had an "obvious protruding bone," "enormous swelling," and "elevated vital signs," Compl. at ¶ 18, Sergeant Czech stated in his uncontested affidavit that he had no knowledge of these conditions because plaintiff arrived at the control center with his fingers bandaged. Czech Aff. at ¶ 6. Plaintiff has produced no medical proof that the delay in treatment caused a serious medical injury. Accordingly, Sergeant Czech is entitled to summary judgment on this claim.

Furthermore, there is no evidence that Sergeant Czech's conduct met the subjective prong of deliberate indifference. The record reflects that plaintiff Czech received a telephone call from Health Care at 1440 hours, stating that plaintiff had dislocated his finger and would need to be transported off-site to the hospital for treatment. *Id.* at ¶ 5; Urgent/Emergency Telephone Log (docket no. 121 at p.6). While staff were being relieved from their assignments to transport plaintiff, Czech received additional calls at 1500 and 1510 hours that two prisoners had been injured in the weight pit and were being assessed by Health Care as to whether they needed to go to the hospital. Czech Aff. at ¶ 7. Ultimately, plaintiff was taken off-site at 1525 hours, approximately 45 minutes after Czech received the initial call regarding plaintiff, and 15 minutes after Czech received the last

7

call regarding the other injured prisoners. *Id.* at ¶ 8; Log (docket no. 121-1 at p. 8). There is no evidence that Sergeant Czech disregarded an excessive risk to plaintiff's health or safety. Accordingly, defendant Czech's motion for summary judgment should be granted.

### C. RN Bates' motion for summary judgment (docket no. 127)

#### 1. Plaintiff's allegations

On May 13, 2008, plaintiff injured the third digit on his right hand while lifting weights. Compl. at ¶ 58. When plaintiff contacted the unit officer at 2020 hours about the injury, former defendant R.N. Habtemariam advised the officer that he was running the med lines for level five prisoners, that his shift was about to end, that he did not have time to treat plaintiff and that plaintiff should wait until the next day for treatment. *Id.* at ¶ 59. Nevertheless, plaintiff was seen at 2137 hours, when R.N. Bates had plaintiff escorted to health services from the housing unit. *Id.* at ¶ 61. As a result of the weight lifting injury, plaintiff sustained a five centimeter cut and lost a considerable amount of blood. *Id.* at ¶ 63. R.N. Bates cleaned the wound, placed a dressing and splint on the wound and told plaintiff that he would be seen by the doctor the next morning. *Id.* Plaintiff asserts that Bates was "covering up" for Habtemariam's "unprofessional behavior" and did not use sutures to close the wound. *Id.* at ¶ 64. Because plaintiff was not called to health services the next day, he had the unit officer call R.N. Bates to dress his injury again. *Id.* at ¶ 65. R.N. Bates later placed plaintiff on health services call-out for x-rays on May 15, 2008. *Id.* at ¶ 66.

Plaintiff also alleged that he requested stronger pain medication because the Tylenol prescribed did not adequately address the pain. *Id.* at ¶ 71. Plaintiff sent health care requests regarding his situation on the following dates: May 16 and 30, 2008; June 6, 9 and 20, 2008; July

7, 2008; and January 20 and 26, 2009. *Id.* Plaintiff further alleged that RN Bates was one of the individuals involved in responding to those requests. *Id.*

### 2. Lack of exhaustion

RN Bates contends that plaintiff's claims against him are not exhausted.

#### a. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### b. MDOC grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the giveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF. Plaintiff filed four grievances while incarcerated at ICF, each of which is discussed below. *See* Grievance Inquiry (docket no. 37-4).

      **c.**    **Grievances**

The court previously concluded that plaintiff exhausted four grievances while incarcerated at ICF: ICF-2007-08-1608-12F3 ("1608"); ICF-2007-10-1994-12e1 ("1994); ICF-2008-05-1181-12E3 ("1181"); ICF-2008-1765-12D1 ("1765); and. *See* Exhs. F, G, H and I attached to CMS' Brief (docket nos. 45-8, 45-9, 45-10 and 45-11). *See* Report and Recommendation at p. 12 (docket no. 60).[4]

---

[4] The court notes that it in a previous Report it inadvertently referred to Grievance "1765" as Grievance "1775." *See* Report and Recommendation at p. 12 (docket no. 60).

### i. Grievance 1608

Grievance 1608 involved plaintiff's complaint that his cholesterol medication was not properly renewed. *See* Grievance 1608 (docket no. 37-9). This grievance, dated August 22, 2007, pre-dates plaintiff's first treatment by R.N. Bates and his first request for medication on May 16, 2008, and is not relevant to plaintiff's claims against R.N. Bates.

### ii. Grievance 1994

Grievance 1994 involved plaintiff's complaint that on October 10, 2007, plaintiff was informed that his scheduled surgery had been cancelled. *See* Grievance 1994 (docket no. 37-10). This grievance pre-dates plaintiff's first treatment by RN Bates and his first request for medication on May 16, 2008. It is not relevant to plaintiff's claims against R.N. Bates.

### iii. Grievance 1181

Grievance 1181 involves the treatment given to plaintiff on May 13, 2008, for his hand injury. *See* Grievance 1181 (docket no. 37-11). Plaintiff's grievance also mentions that the Tylenol prescribed for the injury did not help alleviate the pain as of May 23, 2008, the date of the grievance. *Id.* It appears to the court that this grievances exhausted plaintiff's claim regarding R.N. Bates treatment on May 13, 2008, and for the alleged failure to prescribe stronger pain medication on May 16, 2008.

### iv. Grievance 1765

Grievance 1765 involves plaintiff's meeting with Dr. Nelson on August 13, 2008, regarding the treatment of his finger. *See* Grievance 1765 (docket no. 37-12). Plaintiff stated in the grievance that R.N. Bates said that the x-ray showed no abnormalities, but Dr. Nelson detected a bone chip in his evaluation of the x-ray. Plaintiff does not allege any claim against R.N. Bates with

11

respect to the events of August 13, 2008. Accordingly, this grievance is not relevant to plaintiff's claims against R.N. Bates.

### d.     Summary of exhaustion

Based on the forgoing, the court concludes that plaintiff exhausted his claims against R.N. Bates for alleged improper treatment of his wound on May, 13, 2008, and failure to prescribe stronger pain medication on May 16, 2008. However, because plaintiff has not exhausted his claims with respect to requests for stronger pain medication on May 30, 2008; June 6, 9 and 20, 2008; July 7, 2008; and January 20 and 26, 2009, R.N. Bates should be granted summary judgment as to those claims.

### 3.     Eleventh Amendment immunity

Plaintiff appears to seek monetary damages against R.N. Bates in his official capacity. R.N. Bates seeks summary judgment on the official capacity claim on the basis of Eleventh Amendment immunity. "[T]he Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities." *See Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003). Accordingly, R.N. Bates is entitled to Eleventh Amendment immunity on this claim.

### 4.     Eighth Amendment claim

### a.     Treatment of the wound

R.N. Bates addressed the treatment of plaintiff's injury as follows. Contrary to plaintiff's allegation that he had a five-centimeter cut which required stitches, R.N. Bates states in his uncontested affidavit that plaintiff's "cut was less that 1 centimeter in length with a small amount of bleeding." Bates Aff. at ¶ 4 (docket no. 128-1). Plaintiff's medical records reflect that the

laceration was "about 1 cm in length and of unknown depth." MDOC Medical Records (May 13, 2008) (docket no. 44). Based on the size of the wound, it required only a dressing and no suturing. Bates Aff. at ¶ 5; MDOC Medical Records (May 13, 2008). RN Bates applied a splint with stretch gauze for comfort and immobilization and gave plaintiff "several packets of Motrin for pain." Bates Aff. at ¶ 5; MDOC Medical Records (May 13, 2008). The record reflects that plaintiff had a minor injury which RN Bates treated. Nothing in the record suggests that RN Bates acted with deliberate indifference to a serious medical need contrary to the Eighth Amendment.

Furthermore, the Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976). This claim falls in the latter category. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id. See Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"). *See also*, *Woodberry v. Simmons*, 146 Fed.Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"). Here, it is uncontested that R.N. Bates provided plaintiff with treatment for his cut. Accordingly, R.N. Bates is entitled to summary judgment as to this claim.

### b. Pain medication

As previously discussed, plaintiff was given "several packets of Motrin" when R.N. Bates dressed the finger injury. There is no evidence that plaintiff requested stronger pain medication from R.N. Bates after that time. Plaintiff's request for stronger pain medication on May 16, 2008 was not directed at R.N. Bates. Rather, this was a symptom kite sent to the prison health care system, in which plaintiff requested stronger pain medications for the severe pain and throbbing in his finger. *See* Bates Aff. at ¶¶ 10-11; Kite Response (docket no. 128-1 at p. 7). R.N. LeBarre responded to the kite, with the comment "Seen today in clinic." Kite Response (docket no. 128-1 at p. 7). Nothing in the record suggests that R.N. Bates acted with deliberate indifference contrary to the Eighth Amendment in denying plaintiff pain medication. R.N. Bates is also entitled to summary judgment as to this claim.

### 4. Qualified Immunity

R.N. Bates also moved for summary judgment on grounds of qualified immunity.

> Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816, 172 L.Ed.2d 565 (2009).

*Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir 2011). The court may exercise its sound discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, the first prong is lacking. As previously discussed, R.N. Bates did not violate plaintiff's constitutional rights. Accordingly, R.N. Bates is entitled to qualified immunity.

## V. Recommendation

For the reasons set forth above, I respectfully recommend that R.N. Bates' uncontested motion to set aside the default (docket no. 116) be **GRANTED**.

I further recommend that the uncontested motions for summary judgment by defendants Richard Czech (docket no. 120) and R.N. Bates (docket no. 127) be **GRANTED** and that they be **DISMISSED** from this action.

I further recommend that Dr. Iqbal's uncontested motion to dismiss and/or for summary judgment (docket no. 130) be **GRANTED** and that he be **DISMISSED** from this action.


Dated: February 3, 2012 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).